1

The Honorable John C. Coughenour

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                   AT SEATTLE

10  BRUCE TOERING, individually and on behalf
    of all those similarly situated,
11                                                      No. 2:15-cv-02016-JCC
                        Plaintiff,
12                                                      DEFENDANT EAN HOLDINGS,
                                                        LLC'S OPPOSITION TO
            v.                                          PLAINTIFF'S MOTION FOR
13                                                      CLASS CERTIFICATION
    EAN HOLDINGS, LLC, a foreign corporation,
14
                        Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016)
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................................ 3

    A.   EAN Began Paying the Purported Proposition 1 Minimum Wage in mid-2015 .................................................................................................................. 3

    B.   Plaintiff's Lawsuit. ....................................................................................................... 3

    C.   EAN's Settlement Offers. ........................................................................................... 4

        1.   The Terms of the Settlement Offers. ............................................................. 4

        2.   EAN's Communication of the Offers to Current Employees. ................... 5

        3.   EAN's Communication of the Offers to Former Employees. ................... 6

    D.   Plaintiff's Discovery Regarding the Settlement Offers. ......................................... 6

III. ARGUMENT ..................................................................................................................... 7

    A.   Plaintiff Bears the Burden to Affirmatively Demonstrate That Each Class Certification Element Is Met Following a Rigorous Analysis. .................... 7

    B.   Plaintiff Fails to Demonstrate Four Elements as to the Releasor Class and Each Independently Requires Denial of Class Certification. ....................... 7

        1.   Plaintiff Lacks Standing to Challenge the Releases. ................................. 7

        2.   Plaintiff's Claims Are Not Typical of the Releasors' Claims. ................. 8

        3.   Plaintiff Is an Inadequate Class Representative of the Releasors. ............................................................................................... 10

        4.   Individual Lawsuits Are a Superior Means for Individuals to Challenge Their Releases. ..................................................................... 11

        5.   Plaintiff's Three Sets of Arguments and Authorities Fall Flat. ............. 12

            a.   The Court Need Not Decide Whether the Releases Are Valid to Deny Certification on the Releasor Class. ................................. 12

            b.   Plaintiff's Authorities Are Inapposite. ....................................... 12

            c.   Although the Parties Agree the Validity of the Releases Is Not Before the Court, EAN Briefly Responds to Plaintiff's Arguments Regarding Their Validity. ........................................ 14

    C.   The Court Also Should Not Certify the Non-Releasor Class for Two Independent Reasons. ........................................................................................... 15

        1.   The Non-Releasor Class Does Not Satisfy Numerosity. ........................ 16

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - i
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

2.     The Large Number of Releases Shows that Individual
       Resolutions Are Superior to a Class-wide Resolution. .........................18

D.     To the Extent Any Class Is Certified, the Class Period Should End
       No Later Than October 3, 2015.........................................................19

IV.    CONCLUSION ......................................................................................19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - ii
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Bernard v. Gulf Oil Corp.*,
   841 F.2d 547 (5th Cir. 1988) ..................................................................................8

5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ...............................................................................................7

6

7

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
   1995 WL 764579 (E.D. Pa. Dec. 18, 1995) ...................................................10, 12

8

*Clemens v. Bank of N.Y. Mellon*,
   2015 WL 221080 (W.D. Wash. Jan. 15, 2015) .......................................................7

9

10

*Dubin v. E.F. Hutton Grp., Inc.*,
   1990 WL 105757 (S.D.N.Y. July 20, 1990)..........................................................13

11

*EOCC v. Goodyear Aerospace Corp.*,
   813 F.2d 1539 (1987) ..............................................................................................7

12

13

*Geier v. M-Qube Inc.*,
   314 F.R.D. 692 (W.D. Wash. 2016) ......................................................................10

14

*Giles v. St. Charles Health Systems, Inc.*,
   294 F.R.D. 585 (D. Or. 2013)....................................................................2, 13, 14

15

16

*Greeley v. KLM Royal Dutch Airlines*,
   85 F.R.D. 697 (S.D.N.Y. 1980).........................................................................9, 11

17

*In re M.L. Stern Overtime Litig.*,
   250 F.R.D. 492 (S.D. Cal. 2008) ...........................................................................15

18

19

*Jordan v. City of L.A.*,
   669 F.2d 1311 (9th Cir. 1982) .........................................................................16, 17

20

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
   2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ..........................................................13

21

22

*Leuthold v. Destination Am., Inc.*,
   224 F.R.D. 462 (N.D. Cal. 2004) ..........................................................................18

23

*Madrigal v. Tommy Bahama Grp., Inc.*,
   2011 WL 10511339 (C.D. Cal. June 27, 2011)......................................................10

24

*Maiden v. Biehl*,
   582 F. Supp. 1209 (S.D.N.Y. 1984) ......................................................................18

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Marshall v. Bonded Adjustment Co.*,
    2012 WL 3044246 (E.D. Wash. July 25, 2012) .......................................16, 17, 18

*McDonald v. Ricardo's on the Beach, Inc.*,
    2013 WL 228334 (N.D. Cal. Jan. 22, 2013)..........................................................18

*Melong v. Micronesian Claims Comm'n*,
    643 F.2d 10 (10th Cir. 1980) ................................................................. *passim*

*Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Texas*,
    511 F.2d 1073 (10th Cir.1975)..............................................................................17

*Mortimore v. Fed. Deposit Ins. Corp.*,
    197 F.R.D. 432 (W.D. Wash. 2000)........................................................................8

*O'Connor v. Uber Technologies, Inc.*,
    2015 WL 5138097 (N.D. Cal. July 29, 2015) ......................................................18

*Peterson v. Albert M. Bender Co., Inc.*,
    75 F.R.D. 661 (N.D. Cal. 1977) ...........................................................................18

*Rawat v. Navistar Int'l Corp.*,
    2011 WL 222131 (N.D. Ill. Jan. 20, 2011).................................................8, 11, 13

*Romero v. Flaum Appetizing Corp.*,
    2011 WL 812157 (S.D.N.Y. Mar. 1, 2011).............................................................9

*Spann v. AOL Time Warner, Inc.*,
    219 F.R.D. 307 (S.D.N.Y. 2003)...........................................................................10

*Stewart v. Avon Prods., Inc.*,
    1999 WL 1038338 (E.D. Pa. Nov. 15, 1999) ................................................10, 11

*Swoope v. BellSouth Telecomms., Inc.*,
    1998 WL 433952 (N.D. Miss. June 23, 1998) .....................................................8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...........................................................................................7

**State Cases**

*Arnold v. City of Seattle*,
    185 Wash. 2d 510 (2016) ......................................................................................14

*Chadwick v. Nw. Airlines, Inc.*,
    33 Wash. App. 297 (1982) ....................................................................................15

*Filo Foods, LLC v. City of SeaTac*,
    183 Wash. 2d 770 (2015) ...................................................................................3, 4

*Fraley v. Williams Ford Tractor & Equip. Co.*,
    339 Ark. 322 (1999) ..............................................................................................13

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - iv
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Larsen v. Rice*,
    100 Wash. 642 (1918) ...........................................................................................14, 15

*Nationwide Mut. Fire Ins. Co. v. Watson*,
    120 Wash. 2d 178 (1992) ..............................................................................................15

*Pugh v. Evergreen Hospital Medical Center*,
    177 Wash. App. 348 (2013) ...........................................................................................15

*Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*,
    96 Wash. 2d 939 (1982) .................................................................................................15

*Stevens v. Brink's Home Sec., Inc.*,
    162 Wash. 2d 42 (2007) ...................................................................................................4

**State Statutes and Local Ordinances**

RCW 19.52.020(1) ................................................................................................................4

RCW 49.46 .............................................................................................................................4

RCW 49.46.090 ...................................................................................................................17

RCW 49.52 .............................................................................................................................4

RCW 49.52.070 ...................................................................................................................17

RCW 49.60 ...........................................................................................................................15

SeaTac Municipal Code 7.45.080 ......................................................................................14

SeaTac Municipal Code 7.45.100 ......................................................................................17

**Rules**

Fed. R. Civ. P. 20(a)(1) .......................................................................................................16

Fed. R. Civ. P. 23(a)(1) ..................................................................................................2, 16

Fed. R. Civ. P. 23(a)(3) .........................................................................................................7

Fed. R. Civ. P. 23(b)(3)(A) .................................................................................................11

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - v
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## I.    INTRODUCTION

Plaintiff asks the Court to certify two distinct classes:  (1) a class containing 359 individuals who, unlike plaintiff, have signed settlement agreements (the "Releasor Class"); and (2) a class of 27 individuals who have not (the "Non-Releasor Class").  The Court should certify neither.[1]

**The Court Should Not Certify the Releasor Class**:  Courts repeatedly have held that a plaintiff who has not signed a settlement agreement cannot represent individuals who have in a class action.  Indeed, "[t]his issue is not a novel one," and "[i]n each instance, the court considering the question has concluded that proposed class members who have executed releases can not be represented by individuals who have not."  *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 13 (10th Cir. 1980).

This is so because a non-releasor plaintiff cannot meet his burden to affirmatively demonstrate at least four elements required to certify a class that asks whether the releases are valid.  **First**, a named plaintiff must have standing to raise the claim he seeks to certify, but here, plaintiff lacks standing to challenge the settlement agreements to which his is not a party.  **Second**, plaintiff fails to satisfy typicality because the Releasors' claims depend on facts and legal theories that have nothing to do with plaintiff's claims—*i.e.*, facts surrounding the execution of the releases and plaintiff's various (unsupported) legal theories regarding why the releases may be invalid.  Those differences loom large here because the Court must first determine the validity of the releases before reaching any facts or legal theories shared by plaintiff and the Releasors regarding Proposition 1's validity.  **Third**, plaintiff is an inadequate representative to challenge the releases.  That challenge creates a conflict with class members who chose to sign releases after being informed about plaintiff's lawsuit and who presumably do not want to risk losing their settlement payments or potentially becoming subject to a breach of contract claim.  **Fourth**, to the extent any Releasor wishes to challenge his or her release,

---

[1] The number of Releasors may increase because EAN has continued receiving settlement agreements in the last two weeks.  EAN will file a supplemental declaration attaching any additional settlement agreements it receives.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

individual lawsuits filed by Releasors who fully understand the associated risks are superior forums—not a class action led by a plaintiff who has nothing to lose (or gain) by challenging others' releases.

Plaintiff attempts to avoid these well-settled conclusions by arguing that EAN is improperly asking the Court to determine the merits of the releases at class certification.  Not so.  EAN instead argues that a class action is not a proper forum for ***deciding whether*** the releases are valid.  Plaintiff also cites a series of cases holding that releases do not impact numerosity, but EAN does not raise any numerosity arguments regarding the Releasor class.  Finally, plaintiff cites *Giles v. St. Charles Health Systems, Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013), which held that a non-releasor could represent a releasor class.  That case is easily distinguishable because the defendant there admitted that the employees' releases did not bar certification and the court determined the defendant was estopped from changing its position.

This Court accordingly should deny certification of the Releasor Class based on the well-settled rule that a non-releasor plaintiff cannot represent a releasor class.

***The Court Also Should Not Certify the Non-Releasor Class***:  The Court next must decide whether to certify the Non-Releasor class that contains approximately 27 individuals, including plaintiff.  The Court should deny certification here for two independent reasons.  ***First***, plaintiff fails to demonstrate that, with such a small class, joinder of any individuals who wish to pursue their claims is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  This is particularly true because all of the Non-Releasors worked at the same SeaTac location and nearly all of them reside within the Western District.  ***Second***, the putative class members as a whole have expressed widespread hostility toward the class action by signing individual settlement agreements after being informed about plaintiff's case.  That hostility demonstrates that a class proceeding is not a superior means for resolving individuals' disputes.  The Court therefore should not certify the Non-Releasor Class.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 2
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Finally, if the Court were to certify any class, the class period should not extend past October 3, 2015, because, starting October 4, 2015, EAN has paid employees at least the Proposition 1 minimum wage for all hours worked and done so in the current pay period.

## II.   FACTUAL BACKGROUND

### A.   EAN Began Paying the Purported Proposition 1 Minimum Wage in mid-2015.

EAN (like most SeaTac employers) delayed implementing the new minimum wage while Proposition 1 was being challenged in the *Filo Foods et al. v. City of SeaTac* case. Lane Decl. ¶ 3. On August 20, 2015, the Washington Supreme Court issued an opinion that rejected certain challenges to Proposition 1 in that case in a five-to-four decision (though that opinion did not become final until November 30, 2015, when the Court denied a motion for reconsideration). *See generally Filo Foods, LLC v. City of SeaTac*, 183 Wash. 2d 770 (2015). Soon after the initial August 20, 2015, decision, EAN paid employees at least the minimum wage purportedly required under Proposition 1 back to August 23, 2015—*i.e.*, the first pay period beginning after the initial *Filo Foods* decision. *See* Lane Decl. ¶ 4.

On October 23, 2015, EAN issued employees a paycheck for the pay period of October 4, 2015, through October 17, 2015. Lane Decl. ¶ 5. That check—and every one since—has paid EAN's SeaTac employees at least the purported Proposition 1 minimum wage for all hours worked. *Id.* On November 6, 2016, EAN also issued a retro payment to current employees for the period from August 23, 2015, to October 3, 2015. Lane Decl. ¶ 6. That payment equaled the difference between (a) the amounts EAN paid the employee from August 23, 2015, through October 3, 2015, for recorded hours; and (b) the amounts the employee would have been paid assuming the Proposition 1 minimum wage applied to all of those hours. *Id.*

### B.   Plaintiff's Lawsuit.

On November 25, 2015, plaintiff filed this lawsuit in Washington Superior Court, and on December 29, 2015, EAN removed it to this Court. *See* Dkt. 1 ¶ 1. Plaintiff essentially

asserts four claims: (1) a claim for minimum wages under Proposition 1; (2) a duplicative claim for those wages under the Washington Minimum Wage Act ("MWA"), RCW 49.46; (3) a claim for double damages for a willful failure to pay wages under the Washington Wage Rebate Act ("WRA"), RCW 49.52 (which is the subject of EAN's pending motion to dismiss); and (4) interest on unpaid or late-paid wages under RCW 19.52.020(1) as interpreted by *Stevens v. Brink's Home Sec., Inc.*, 162 Wash. 2d 42, 50-51 (2007).  *See* Dkt. 2-1 ("Cmplt.") at ¶¶ 1-27; Dkt. 41 ("Mtn.") at 3:2-10.  He also seeks attorneys' fees and costs.  Cmplt. at 8:13-14.

### C.    EAN's Settlement Offers.

As EAN has explained, it believes it has strong defenses related to Proposition 1's validity.  *See* Dkt. 20 at 11:3-13:8 (EAN's motion to dismiss double damages).  For example, the Washington State Supreme Court's decision that Proposition 1 is not preempted by the federal National Labor Relations Act is not a binding determination of federal law, and significant authority shows the Washington Supreme Court's thinly-reasoned decision is wrong.  *See id.* at 11:3-26.  Moreover, no court has yet addressed whether Proposition 1 is retroactive from the date the *Filo Foods* decision became final, and the City of SeaTac has acknowledged this remains an open question.  *See id.* at 13:9-14:20.

Nonetheless, in mid-2016, EAN decided to make settlement offers to current and former employees in order to resolve the ongoing dispute regarding Proposition 1's validity and employees' potential related wage claims.  Lane Decl. ¶ 7.

### 1.    The Terms of the Settlement Offers.

EAN proposed the following compromise:  it offered the employees 100% of the additional back pay they allegedly are owed from January 1, 2014, to August 23, 2015.  *See* Lane Decl. ¶ 8.  In exchange, EAN asked current employees to release a narrow set of claims "relating to your wages and other compensation, including … claims you may have for overtime, late payment of wages, double damages, [and] interest."  *Id.* ¶ 9, Exh. 3.  For former employees, EAN asked the employees to release all claims that the employee may have against EAN, including the wage-related claims plaintiff asserts.  *Id.* ¶ 13, Exh. 9.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 4
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

To allow employees to make an informed decision, the settlement agreements provided employees with background regarding this case and the release's effect on it.  *See* Lane Decl. ¶¶ 9-10, 13; Exhs. 3-5, 9.  For example, the release:

- explained that plaintiff alleged EAN violated Proposition 1 and related wage-and-hour laws, and sought "unpaid overtime, withheld wages, double damages, interest, costs, and attorneys' fees."

- identified plaintiff's counsel and provided their contact information.

- offered to provide employees with a copy of the complaint and included the Court's address so that individuals could obtain additional information.

- stated in bold type that, by signing the release, the employee understood he or she "**will not be able to pursue any of the claims and rights you have given up in this Release … including through the *Toering* case**."

*Id.* ¶¶ 9, 13; Exhs. 3, 9 (emphasis in original).  The release also stated that "<u>**Whether or not you accept this offer by singing this Release is completely up to you.**</u>"  *Id.* (emphasis in original).

### 2.    EAN's Communication of the Offers to Current Employees.

EAN conveyed those releases to current employees primarily via a series of town hall meetings in June 2016 led by EAN's Regional Vice President Mark Verbois.[2]  Lane Decl. ¶ 9.  Mr. Verbois based his comments during those meetings on the talking points and FAQs that are attached to the Lane declaration.  *Id.* ¶ 9, Exhs. 1, 2.  Mr. Verbois informed employees that the agreement was voluntary and that no one would retaliate against any employee regardless of his or her choice.  *Id.* ¶ 9, Exh. 2, p. 2.  Mr. Verbois informed employees that the agreement was voluntary and that no one would retaliate against any employee regardless of his or her choice.  *Id.*  Mr. Verbois also noted that the release would prevent the employee from pursuing

---

[2] A handful of employees could not attend the town hall meetings, and EAN conveyed the settlement offers to them by mail or email.  *See* Lane Decl. ¶ 11, Exh. 6 (attaching an example of such a communication to an employee).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 5
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

legal action against EAN on the Proposition 1 pay issue and offered to provide employees a detailed explanation of how EAN calculated his or her individual settlement amount.  *Id.*  To date, 234 of the 235 current employees have accepted the settlement offers.  *Id.* ¶ 12, Exh. 7.

### 3.   EAN's Communication of the Offers to Former Employees.

EAN sent former employees—including plaintiff—the settlement agreement along with a cover letter.  Lane Decl. ¶ 13, Exhs. 8, 9.  That letter provided a brief overview of the settlement agreement and stated "[w]hether or not you choose to sign the agreement and collect the retro pay we are offering is up to you.  It is entirely voluntary and there will not be any retaliation against you if you choose not to sign."  *Id.*  For employees who did not respond to the letter either by accepting it or stating they were not interested, EAN sent follow up communications.  *Id.* ¶¶ 14, 15 & Exhs. 10-11.  Those communications also emphasized that the agreement was voluntary.  *E.g.*, *id.*

To date, 124 of the 150 former employees have accepted the settlement agreement.  Lane Decl. ¶ 16, Exh. 12.  Those individuals include Noor Yosof, who had previously filed but later dismissed a class-action lawsuit against EAN, and one individual who initially indicated she was interested in seeking double damages and other amounts against EAN.  *Id.* ¶¶ 16, 18; Hess Decl. ¶ 3.

### D.   Plaintiff's Discovery Regarding the Settlement Offers.

On June 6, 2016, plaintiff propounded discovery seeking information and documents related to EAN's settlement offers and settlement-related communications, and on July 6, 2016, EAN responded.  Hess Decl. ¶ 2, Exh. 1.  Among other things, EAN detailed its settlement calculations and settlement-related communications.  *See id.* at pp. 3-6.  Moreover, to date, EAN has produced hundreds of pages of documents related to the settlement agreements and EAN's communications with putative class members about those agreements.  *Id.* ¶ 2.  After reviewing that documentation, plaintiff admits he "is not aware of any direct coercion exerted" by EAN to obtain the settlement agreements.  Mtn. at 10 n.7.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### III.   ARGUMENT

**A.      Plaintiff Bears the Burden to Affirmatively Demonstrate That Each Class Certification Element Is Met Following a Rigorous Analysis.**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation omitted).  A putative class plaintiff accordingly bears the burden to "affirmatively demonstrate" each of the class certification elements, and a court must evaluate those elements using a "rigorous analysis." *Id.* at 2551.[3]  Here, that rigorous analysis reveals that plaintiff falls far short of his burden to demonstrate several required class certification elements as to the Releasor and Non-Releasor Classes.

**B.      Plaintiff Fails to Demonstrate Four Elements as to the Releasor Class and Each Independently Requires Denial of Class Certification.**

The Court should deny certification on the Releasor Class because plaintiff has failed to show that he has standing to challenge the releases, and he also has not demonstrated typicality, adequacy, and superiority.  *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (standing); Fed. R. Civ. P. 23(a)(3) (typicality), (a)(4) (adequacy), (b)(3) (superiority).

#### 1.      Plaintiff Lacks Standing to Challenge the Releases.

The Supreme Court has held that a class cannot be certified if the named plaintiff lacks standing to raise the claim he seeks to certify.  *Blum*, 457 U.S. at 999.  Moreover, the Ninth Circuit has held that an individual who is not a party to a settlement lacks standing to challenge it.  *EOCC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 n.2 (1987) ("The EEOC was not a party to the settlement [between the employer and the employee] and lacks standing to challenge … it."); *see also Clemens v. Bank of N.Y. Mellon*, 2015 WL 221080, at *1 (W.D. Wash. Jan. 15, 2015) (Coughenour, J.) ("Plaintiff lacks standing to challenge contracts to which he is not a party.").

---

[3] Plaintiff cites one pre-*Dukes* case for the proposition that the court should accept a plaintiff's substantive allegations as true at class certification.  Mtn. at 6:11-14.  That is no longer the law.  *See Dukes*, 131 S. Ct. at 2550 (requiring plaintiff to demonstrate "in fact" that the class certification requirements are met).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 7
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Courts applying these well-settled principles repeatedly have refused to allow a plaintiff who did not sign a release to raise class claims on behalf of employees who did.  For example, in *Rawat v. Navistar Int'l Corp.*, 2011 WL 222131, at *1-2 (N.D. Ill. Jan. 20, 2011), the named plaintiffs alleged that employer underpaid employees for certain stock options.  Fifty-three employees signed settlement agreements releasing those claims but the two named plaintiffs did not.  *Id.* at *1.  The named plaintiffs nonetheless attempted to certify a class including the releasors.  *Id.* at *4.  The court rejected that request because "the named Plaintiffs here do not have standing to challenge an agreement to which they were not a party."  *Id.* at *5; *accord Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550-51 (5th Cir. 1988) (affirming trial court's decision to deny certification of class including releasors because putative class plaintiffs, who did not sign a release, lacked standing to challenge the releases); *Swoope v. BellSouth Telecomms., Inc.*, 1998 WL 433952, at *5 (N.D. Miss. June 23, 1998) (denying certification; "None of the named plaintiffs signed a release.  Therefore, they lack standing to assert that the releases are invalid.").

The Court accordingly should deny certification on standing grounds.

### 2.   Plaintiff's Claims Are Not Typical of the Releasors' Claims.

Plaintiff next must demonstrate that his claims are typical of the claims of other putative class members.  To meet this test, the plaintiff's "claims must stem 'from the same event, practice, or course of conduct that forms the basis of the class claims ***and*** [be] based upon the same legal remedial theory.'"  *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 436 (W.D. Wash. 2000) (Coughenour, J.) (internal quotations omitted; first emphasis added; second alternation in original).  Neither is true here.  Plaintiffs' claims rest only on events related to EAN's failure to pay the allegedly-required Proposition 1 minimum wage, whereas the Releasors' claims are based on additional events related to the releases. Those differences also implicate separate legal theories regarding whether the releases are valid.  These differences are significant because, before the court can reach the merits of the Releasors' claims, it must first decide whether the releases are valid—an inquiry that has nothing to do with plaintiff's claims.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 8
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

For these reasons, Courts repeatedly have recognized that a non-releasor plaintiff's claims are not typical of the releasors' claims even though all of their claims involve the same underlying legal violation. *E.g.*, *Melong v. Micronesian Claims Comm'n*, 643 F.2d at 15 (affirming class certification denial; "When the purported class representative has not executed a release [but putative class members have] serious questions are raised concerning … typicality."); *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 701 (S.D.N.Y. 1980) ("Having refused to settle ... [plaintiff's] interest is not coextensive with the interests of class members who settled, and his claim is not typical of those of the class."); *Swoope*, 1998 WL 433952, at *2-4 (although the "test for typicality is not demanding," non-releasor plaintiffs' claims were atypical of releasors' claims).

Plaintiff's speculation that current employees may have felt coerced by their current employment relationship with EAN or that others may have signed the agreements out of financial need further undermine his typicality showing. *See* Mtn. at 10-11 n.7 (speculating that employment relationship could cause Releasors to feel pressured to sign agreements); Toering Decl. (Dkt. 43) ¶ 7 (speculating Releasors may have felt coerced to sign because they live "paycheck to paycheck"). To evaluate those assertions, "the Court would need to perform a detailed, fact-specific inquiry regarding whether each release was entered into 'knowingly and voluntarily.'" *Romero v. Flaum Appetizing Corp.*, 2011 WL 812157, at *6 (S.D.N.Y. Mar. 1, 2011) (finding typicality unmet for this reason). For example, to determine if Releasors signed the agreements out of financial need, the Court would need to consider each Releasors' individual financial condition, the size of the settlement offer, and any other factors that motivated the Releasor to accept the settlement. Those inquiries—which have no connection to plaintiff's claims—are "ill-suited to class treatment, since the state of mind of each individual signer would presumably need to be explored." *Ciarlante v. Brown & Williamson Tobacco Corp.*, 1995 WL 764579, at *2 (E.D. Pa. Dec. 18, 1995) (denying certification for this reason).[4]

---

[4] This analysis also demonstrates that predominance is unmet because these individualized inquiries would predominate over any common questions. *See, e.g.*, *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 323

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 9
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Therefore, the Court also should deny certification on typicality grounds.

### 3. Plaintiff Is an Inadequate Class Representative of the Releasors.

The adequacy analysis asks: "(1) do the named plaintiffs … have any conflicts of interest with other class members and (2) will the named plaintiffs … prosecute the action vigorously on behalf of the class?" *Geier v. M-Qube Inc.*, 314 F.R.D. 692, 698-99 (W.D. Wash. 2016) (quotation omitted).  Here again, neither test is met with respect to the Releasors.

*First*, the releases create a significant conflict between plaintiff and the Releasors. While plaintiff wishes to void the releases in favor of his case, the Releasors likely wish to retain their settlement payments because they accepted those payments only after EAN informed them about plaintiff's lawsuit and that signing the releases would bar their participation in the case.  *See* section II.C.1-2, *supra*.  Indeed, at least two releasors sued or threatened to sue EAN regarding Proposition 1 only to reconsider and accept EAN's settlement offer.  *See* section II.C.3, *supra*.

Challenging the releases also comes with substantial risk for the Releasors.  If the Court voids the settlement, the Releasor could be "forced to return the [settlement] payment," and if EAN prevails on its Proposition 1 defenses, the Releasor would end up with nothing.  *See Stewart v. Avon Prods., Inc.*, 1999 WL 1038338, at *5 (E.D. Pa. Nov. 15, 1999).  Moreover, the challenging Releasor would be "be subject to counterclaim … for breach of the release agreement" in which the releasor promised not to participate in the *Toering* litigation.  *See id.*; Lane Decl. ¶¶ 12, 16, Exhs. 7 & 12 ("If you sign below, you will not be able to pursue any of the [released] claims … including through the *Toering* case").

Courts accordingly have recognized that a non-releasor plaintiff is inadequate to represent a proposed class of releasors because the release agreements "could lead to a schism between Plaintiff and the various putative Class members regarding the appropriate strategy

(S.D.N.Y. 2003) (predominance unmet because determining "whether an individual plaintiff has waived his right to recover benefits under ERISA by signing a General or Lump Sum Release necessitates individualized inquiry into the circumstances surrounding the execution of the Release."); *Madrigal v. Tommy Bahama Grp., Inc.*, 2011 WL 10511339, at *15 (C.D. Cal. June 27, 2011) (same).

and remedy to pursue." *Stewart*, 1999 WL 1038338, at *5; *accord Rawat*, 2011 WL 222131, at *8 (same result because "[p]laintiffs' interests are at odds with the interest of persons who wish to retain the benefit of the releases they signed").

*Second*, plaintiff lacks an incentive to advocate vigorously for overturning the releases. He need not show the release is invalid to prevail on his individual claims, and he has nothing to gain personally by invalidating a release. *See Greeley*, 85 F.R.D. at 700 (holding non-releasor plaintiff was inadequate because "to prevail on his individual claim, [the plaintiff] will not have to make this threshold showing" regarding the release's invalidity); *see also Melong*, 643 F.2d at 14 (same; quoting *Greeley*). Plaintiff self-servingly contends that he has a sufficient incentive because he is "motivated and determined" to challenge the releases. Toering Decl. (Dkt. 42) ¶ 7. That conclusory allegation cannot be sufficient because any putative class plaintiff could profess a motivation to advocate on behalf of others even if the facts—like those here—demonstrate that the individual has no personal interest in vigorously pursuing a specific claim.

For both these reasons, plaintiff is not an adequate representative and the Court should deny certification of the Releasor Class.

### 4. Individual Lawsuits Are a Superior Means for Individuals to Challenge Their Releases.

To determine if a class action is superior to individual lawsuits, a court considers (among other things) "the interest of members of the class in individually controlling the prosecution … of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, the Releasors have a strong interest in controlling litigation regarding their releases because, by challenging the release, they may be subject to a counterclaim for breach of contract, they may be required to return the settlement payments, and even if they succeed in challenging the release, they may end up with nothing if EAN prevails on its defenses related to Proposition 1. *See* section III.B.3, *supra*. Those interests are particularly strong because the settlement payments equaled up to $24,951.13 and averaged approximately $6,771. Lane Decl. ¶ 19. If a Releasor wishes to

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 11
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

place his settlement amount in jeopardy, that individual—not a plaintiff who has nothing to lose by challenging the releases—"should do so on an individual basis, with full awareness of the potential risks." *Ciarlante*, 1995 WL 764579, at *2 (denying certification because individual lawsuits were a superior means to challenge releases).

Therefore, individual actions are a superior means for Releasors to challenge their settlement agreements if they so desire.

### 5.   Plaintiff's Three Sets of Arguments and Authorities Fall Flat.

#### a.   The Court Need Not Decide Whether the Releases Are Valid to Deny Certification on the Releasor Class.

Plaintiff asserts that EAN improperly asks the Court to determine the validity of the releases at class certification. Mtn. at 10. Plaintiff's argument rests on a false premise because none of EAN's arguments ask or require the Court to determine if the releases are valid. Instead, EAN's arguments demonstrate that a class action led by a non-releasor plaintiff is not a permissible forum for determining *whether* the releases are valid.

*Melong*, 643 F.2d 10 is instructive. There, a non-releasor plaintiff attempted to certify a class involving releasors. *Id.* at 13. The Tenth Circuit affirmed the trial court's class certification denial on typicality, adequacy, and superiority grounds. *Id.* at 14-15. The Court recognized that, to reach those conclusions, it did not need to reach the merits of the releases: "Given the posture of these cases, we find it unnecessary to make any determination concerning the nature and legal effect of the releases executed by the vast majority of [the putative class members]. The problems cited above [regarding the class certification elements] are mentioned merely to demonstrate the difficulties inherent in allowing the proposed class representatives [who did not execute release] to purse these class claims." *Id.* at 16.

### b.   Plaintiff's Authorities Are Inapposite.

Plaintiff's class certification cases also do not provide any support. Plaintiff cites three cases where the court found that settlement agreements were not relevant to the *numerosity* analysis because, to determine if those agreements prevented an individual from pursuing his or

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 12
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

her claim, the court would need to determine if the agreement was valid.  Mtn. at 10:13-23 (citing *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *3 (N.D. Ill. Dec. 1, 2000); *Dubin v. E.F. Hutton Grp., Inc.*, 1990 WL 105757, at *4 n.4 (S.D.N.Y. July 20, 1990); and *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 334-35 (1999).  Those cases are inapposite here because, with respect to the Releasor class, EAN does not argue that numerosity is unmet.[5]

Indeed, plaintiff cites only ***one*** case where a court considered a release in the context of any element other than numerosity, but it is easily distinguishable.  In *Giles*, 294 F.R.D.at 589, the employer offered settlement agreements to employees.  Many putative class members accepted them but the named plaintiffs did not.  *Id.* at 589, 591.  Afterward, the defendant represented to the court and the releasors that "executing a Release would not affect a potential class member's ability to join in this action and obtain additional relief."  *Id.* at 591.  At class certification, the defendant changed course and argued that the releases rendered the named plaintiffs' claims atypical and the named plaintiffs inadequate.  *Id.* at 591-93.  The court rejected that argument because the defendant "cannot obtain an advantage in these proceedings by taking positions that contravene those previously asserted."  *Id.* at 592 n.3.  Here, of course, EAN has always contended that the releases are relevant to the class certification analysis.[6]

---

[5] These cases are distinguishable for other reasons.  In *Ladegaard* and *Fraley*, the courts determined they should consider the releases because the employer engaged in misconduct when it gathered the releases.  *Ladegaard*, 2000 WL 1774091, at *1, *3 (employer allegedly told employees they "would no longer be working with the company if they did not sign"); *Fraley*, 339 Ark. at 344 (holding "improperly obtained" releases should not be considered).  Here, in contrast, plaintiff admits he "is not aware of any direct coercion exerted" even after reviewing the hundreds of documents EAN produced regarding its release-related communications.  *See* section II.D, *supra*. (quoting Mtn. at 10 n.7); *Rawat*, 2011 WL 222131, at *6 (distinguishing *Ladegaard* because court found no wrongdoing in defendant's settlement communications).  Moreover, in *Dubin*, the court could not determine whether the releases impacted the case because the defendant apparently did not file them.  *See* 1990 WL 105757, at *4 n.4.

[6] Plaintiff's cases stating that wage-and-hour class actions are ideal for certification also are inapposite because none of them involved the release issues raises here.  Mtn. at 11:19-12:7 (citing *Rowden v. Pac. Parking Sys., Inc.*, 282 F.R.D. 581 (C.D. Cal. 2012), and *Ramos v. SimplexGrinnell LP*, 2011 WL 2471584, at *5 (E.D.N.Y. 2011)).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 13
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### c. Although the Parties Agree the Validity of the Releases Is Not Before the Court, EAN Briefly Responds to Plaintiff's Arguments Regarding Their Validity.

Plaintiff repeatedly argues that he believes the releases others signed are invalid, but he acknowledges "it would be premature to decide their validity in the context of a class certification motion."  Mtn. at 1:22-24; *accord* Mtn. at 10:3 ("However, the Court need not and should not resolve this [release] issue now.").  EAN agrees.  Nonetheless, EAN briefly responds to plaintiff's three sets of challenges to the validity of the releases.

*First*, plaintiff argues that the releases are invalid under Proposition 1 because it states that "[t]he provision of this Chapter may not be waived by agreement between" a covered employee and a covered employer.  SeaTac Municipal Code 7.45.080; Mtn. at 8:3-12.  However, the only provision of Proposition 1 at issue here is EAN's obligation to pay the purported Proposition 1 minimum wage, and it is undisputed that the settlements paid employees for 100% of those minimum wages from January 1, 2014, through August 23, 2015.[7]  Moreover, Proposition 1 does not say that parties cannot enter into a settlement agreement to resolve a dispute regarding whether the ordinance is valid, which is the controversy in this case and what the settlement agreements seek to resolve.

*Second*, plaintiff claims that the settlement agreements violate Washington's prohibition on waiving minimum wage claims based on *Larsen v. Rice*, 100 Wash. 642 (1918).  Here again, EAN has paid employees their minimum wages, and neither *Larsen* nor any other case plaintiff cites holds that employers and employees cannot compromise their potential claims for liquidated damages or interest.  Moreover, *Larsen* is a nearly 100-year-old anachronism because no reported Washington case has cited it for the proposition that an employer and employee cannot settle disputed wage claims.  In contrast, the Washington Court of Appeals in *Pugh v. Evergreen Hospital Medical Center*, 177 Wash. App. 348, 358-60

---

[7] Plaintiff also suggests that Proposition 1—a local ordinance—bars employees from releasing claims they may have under state law for double damages and interest.  *See* Mtn. at 8:7-11.  Any such prohibition would be void because a municipality cannot determine how the state's laws are enforced.  *See Arnold v. City of Seattle*, 185 Wash. 2d 510 (2016) (A local ordinance may not "permit[] what state law forbids or forbid[] what state law permits.").

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 14
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(2013), recently upheld a release of disputed wage claims related to rest breaks.  That case

properly reflects Washington's long-standing rule that "settlements are strongly favored and are

to be encouraged" even if they release claims based on statutes that further important public

policies.  *Chadwick v. Nw. Airlines, Inc.*, 33 Wash. App. 297, 300-04 (1982), *aff'd*, 100 Wash.

2d 221 (1983) (applying basic contract principles to enforce release of discrimination claims

under RCW 49.60 and rejecting argument that such releases are contrary to public policy);

*accord Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wash. 2d 178, 187 (1992) (settlement are

to be given "great weight").[8]

> **Third**, plaintiff speculates that employees may have felt pressured to sign the releases

due to their ongoing employment relationship with EAN or because they needed the money.

*See* section III.B.2, *supra*.  Plaintiff offers no competent proof to support his speculation, and

even if he had, such concerns are not a basis for voiding a contract.  *See In re M.L. Stern*

*Overtime Litig.*, 250 F.R.D. 492, 498 (S.D. Cal. 2008) (holding that potential coercion from

employer/employee relationship does not demonstrate actual coercion); *Retail Clerks Health &*

*Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wash. 2d 939, 944 (1982) ("The mere

fact that a contract is entered into under stress or pecuniary necessity is insufficient.").

Moreover, EAN's communications repeatedly stated that current and former employees were

free to choose whether to accept the release and that they would not experience any retaliation

regardless of their choice.  *See* section II.C.1-3, *supra*.

> **C.**      **The Court Also Should Not Certify the Non-Releasor Class for Two**
> **Independent Reasons.**

> The Court next must determine whether to certify a class containing the remaining Non-

Releasors.  It should not certify that class because the non-Releasors do not meet the

numerosity requirement and because the large number of releases shows a preference for

individual resolutions rather than a classwide resolution.

---

[8] Plaintiff relatedly argues that interest is "mandatory."  *E.g.*, Mtn. at 7:26-8:1.  Of course, it is mandatory only if the plaintiff prevails and obtains a judgment for unpaid wages.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 15
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1. **The Non-Releasor Class Does Not Satisfy Numerosity.**

To demonstrate numerosity, plaintiff must show that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, the non-Releasor total 27 individuals—26 former employees (including plaintiff) and one current employee.  To determine whether joinder is impracticable for such small groups, courts consider (1) "the geographic dispersion of members of the proposed class;" (2) "the judicial economy that will arise from avoiding multiple actions;" (3) "ability of the members to file individual suits" and "the financial resources of such members;" and (4) "requests for prospective relief that may have an effect on future class members." *Marshall v. Bonded Adjustment Co.*, 2012 WL 3044246, at *5 (E.D. Wash. July 25, 2012); *see also Jordan v. City of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (listing similar factors), *vacated on other grounds*, 459 U.S. 810 (1982).  Each of those factors weighs against numerosity.

*Lack of geographic dispersion*:  "The lack of geographic dispersion of putative class members weighs heavily against a finding that joinder is impracticable." *Marshall*, 2012 WL 3044246, at *7.  Here, all of the putative class members worked at the same SeaTac location, and according to EAN's address information, nearly all of them live within the geographic boundaries of this Court.  Lane Decl. ¶ 23.  Those facts undercut numerosity.

*No Impairment of Judicial Economy:*  Finding numerosity unmet will not impair judicial economy by for two reasons.  First, any non-Releasors who wishes to pursue his claim can seek to join this case.  *See* Fed. R. Civ. P. 20(a)(1) (allowing permissive joinder of additional plaintiffs).  That avoids generating additional cases that could threaten judicial economy.  Second, even if an individual chooses to file a separate lawsuit, that case could be stayed pending the outcome of this action.  Accordingly, "the mere possibility of individual lawsuits is not dispositive when examining whether judicial economy will be furthered by avoiding multiple actions." *Marshall*, 2012 WL 3044246, at *6

*Individuals Are Well-Positioned to Bring Their Own Claims:*  To the extent any non-Releasor wishes to assert his or her own claims, he or she is well positioned to do so for at least

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 16
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    two reasons.  First, because of EAN's settlement offers, the non-Releasors likely know about

2    their potential claims and they have plaintiff's counsel's contact information in case they would

3    like legal guidance.  Second, the putative class members' financial resources are no barrier here

4    because all of the underlying wage provisions allow successful plaintiffs to recover their fees

5    and costs.  SeaTac Municipal Code 7.45.100 (authorizing attorneys' fees and costs to prevailing

6    plaintiff under Proposition 1); RCW 49.46.090 (same under MWA); RCW 49.52.070 (same

7    under WRA).  The 27 Proposition 1 lawsuits filed against other defendants demonstrate that

8    those fee-shifting provisions make it possible even for minimum-wage employees to file their

9    own cases.  *See* Hess Decl. ¶ 3, Exh. 2.

10       ***Plaintiff Does Not Seek Prospective Relief***:  The absence of prospective relief weighs

11   against numerosity because there is no risk that the class will grow due to currently unnamed

12   and unknown individuals who may be harmed by future conduct.  *See Jordan v. County of L.A.*,

13   669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Here,

14   plaintiff does not (and cannot) seek any prospective relief because it is undisputed that EAN

15   currently pays the purported Proposition 1 minimum wage.  *See* section II.A, *supra*.  This

16   factor therefore also weighs against numerosity.

17         Therefore, all of the relevant factors weigh against finding that a joinder of putative

18   class members is impracticable.  The court accordingly should deny certification on numerosity

19   grounds just as many other courts have done when faced with similar facts and sometimes even

20   larger potential classes.  *See, e.g.*, *Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Texas*, 511

21   F.2d 1073, 1077 (10th Cir.1975) (denying certification on 37 member class because joinder

22   was not impracticable); *Maiden v. Biehl*, 582 F. Supp. 1209, 1219-20 (S.D.N.Y. 1984) (holding

23   joinder of members of 28 person class was not impracticable even though "absent class

24   members [were] from a variety of states); *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D.

25   661, 667 (N.D. Cal. 1977) ("The Court's best estimate of the size of the class is between 35 and

26   45 members.  The Court concludes that this number is not so large that joinder is

27   impracticable."); *Marshall*, 2012 WL 3044246, at *8 (finding 25 member class did not meet

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 17
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

numerosity because "[t]here is simply no evidence that joinder of 25 City of Spokane employees would be impracticable").

### 2. The Large Number of Releases Shows that Individual Resolutions Are Superior to a Class-wide Resolution.

Putative class member's widespread hostility toward a class action weighs against superiority. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). Individual releases are one expression of that hostility. *McDonald v. Ricardo's on the Beach, Inc.*, 2013 WL 228334, at *6 (N.D. Cal. Jan. 22, 2013). Therefore, "[t]he fact that many members of a proposed class have settled their disputes has been recognized as a significant factor in determining whether a class action is a superior method for adjudicating the controversy." *Melong*, 643 F.2d at 15. Here, the putative class members have expressed overwhelming hostility to the litigation because 360 out of 387 putative class members—or 93%—have accepted settlement agreements. Courts faced with much lower settlement percentages have found that class member hostility defeated superiority. *See McDonald*, 2013 WL 228334, at *6 (60% settlement rate showed hostility toward class action and defeated superiority).[9]

Despite this hostility, plaintiff argues a class action is superior to individual lawsuits because "many employees likely do not know they have rights under wage and hour laws," the damages are small, and individuals lack sufficient resources to pursue their own claims. Mtn. at 13:26-14:5. None of those three statements is true. First, EAN's settlement communications to the non-Releasors informed them about plaintiff's allegations that they are owed unpaid minimum wages and other damages. *See* section II.C.1-3, *supra*. Second, the average amount of the non-releasors' minimum wage claims is approximately $1,630 or more than $3,200 with the double damages and interest claimed in the Complaint. *See* Lane Decl. ¶ 20. Third, as

---

[9] Plaintiff's citation to *O'Connor v. Uber Technologies, Inc.*, 2015 WL 5138097, at *12 (N.D. Cal. July 29, 2015) suggests no other result because, there, the defendant offered declarations from just 0.25% of the class stating they preferred not to participate in the lawsuit.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 18
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    discussed above, Proposition 1, the MWA, and the WRA all provide for attorneys' fees and

2    costs for successful individual plaintiffs. *See* Section II.B.5.c, *supra*. Therefore, any

3    individuals who wish to pursue their appreciable individual claims have the knowledge and

4    resources to do so.

      **D.**    **To the Extent Any Class Is Certified, the Class Period Should End No Later Than October 3, 2015.**

7          Plaintiff asks the Court to certify classes of all SeaTac non-managerial and non-

8    supervisory "employees employed by defendant at any time since January 1, 2014." Mtn. at

9    6:19-22. That class period is overbroad because EAN indisputably began paying the purported

10   Proposition 1 minimum wage in the current payroll period starting October 4, 2015. From that

11   date forward, neither plaintiff nor any other employee has any claim based on EAN's alleged

12   failure to timely pay the Proposition 1 minimum wage. Therefore, if the Court were to certify

13   any class—which it should not—that class period should end no later than October 3, 2015.

14                        **IV.**    **CONCLUSION**

15         Plaintiff provides no reason for this Court to depart from the well-established rule that a

16   non-releasor plaintiff cannot certify a class to challenge settlement agreements that other

17   individuals signed. The Court accordingly should deny certification on the Releasor Class.

18   The Court also should not certify the remaining 27-person Non-Releasor Class because any of

19   those individuals who are not hostile to participating in this case could be joined as party-

20   plaintiffs.

21         DATED this 8th day of August, 2016.

22                               Davis Wright Tremaine LLP
                            Attorneys for EAN HOLDINGS, LLC

23                               By *s/ Harry J. F. Korrell*

24                                  Harry J. F. Korrell, WSBA #23173
                               Ryan C. Hess, WSBA #50738

25                                  1201 Third Avenue, Suite 2200
                               Seattle, WA 98101-3045

26                                  Telephone: (206) 622-3150
                               Fax: (206) 757-7700

27                                  E-mail: harrykorrell@dwt.com
                               E-mail: ryanhess@dwt.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2016, I electronically filed the foregoing Defendant's

Opposition to Plaintiff's Motion for Class Certification with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

Carson Flora
Dmitri Iglitzin
Schwerin Campbell Barnard Iglitzin & Lavitt
18 W. Mercer St., Suite 400
Seattle, WA 98119
flora@workerlaw.com
iglitzin@workerlaw.com

Adam J. Berger
Martin S. Garfinkel
Schroeter Goldmark & Bender
810 3rd Ave., #500
Seattle, WA 98104
berger@sgb-law.com
garfinkel@sgb-law.com

*/s/ Margaret C. Sinnott*
Margaret C. Sinnott
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone: (206) 622-3150
Fax: (206) 757-7700

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016) - 20
DWT 30071426v4 0103687-000003

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax