THE HONORABLE JOHN COUGHENOUR

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10 BRUCE TOERING, individually and on
behalf of all those similarly situated,

No. 2:15-cv-02016-JCC

11
                                    Plaintiff,

**PLAINTIFF'S REPLY IN
SUPPORT OF MOTION FOR
CLASS CERTIFICATION**

12

13     v.

14 EAN HOLDINGS, LLC, a foreign
corporation,

15

16                                  Defendant.

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Telephone: (206) 622-8000 • Fax: (206) 682-2305

1

## I.     INTRODUCTION

2

This case reveals a cynical attempt by a large company to deprive its lowest paid workers

3
of wage-related compensation to which they are entitled. After the Washington Supreme Court in

4
*Filo Foods et al v. City of SeaTac,* 183 Wn.2d 770 (Aug. 20, 2015) found the SeaTac Ordinance

5
to be valid and applicable, Defendant EAN decided to only partially comply with its legal

6
obligations under the Ordinance: it would pay only *current* employees at the higher hourly rate

7
going forward, and it would make no retroactive payments for the period prior to the *Filo Foods*

8

9
decision. After this lawsuit was filed shortly thereafter on November 25, 2015 (seeking these

10
retroactive wages, interest and exemplary damages), Defendant came up with a new scheme. It

11
decided, in "mid-2016" to make retroactive payments back to January 1, 2014 to both current

12
and former workers, but only for back pay (*i.e.,* without interest or penalties), and only if each

13
worker signed a release of legal claims. Lane Dec. ¶ 7 (Dkt. #48). EAN obviously counted on the

14
fact that its low paid hourly workers would jump at the money offered despite the fact that the

15
payments were incomplete and required handing to Defendant a legal shield to which it was not

16

17
entitled. This latest scheme had the added benefit of providing a defense to class certification,

18
namely, that the releasors arguably would no longer be a part of the lawsuit and could not be

19
represented by a plaintiff who refused to sign the release.

20
According to Defendant's statistics, there are a total of 385 putative class members, 61%

21
of whom (or 235) are current employees. *Id.* Under the releases, current employees waive "<u>any</u>

22
<u>legal claims under state or local law</u>" … "<u>related to your wages or other compensation</u>." *Id.,* Ex.

23
9. (Emphasis added). The 150 former employees were asked to waive "<u>any legal claims under</u>

24
<u>federal, state, or local law that you may have as of the date you sign this Release Agreement.</u>"

25

26

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 1
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Telephone:  (206) 622-8000 • Fax:  (206) 682-2305

Id., Ex. 3. (Emphasis added).[1] In other words, both current and former employees were required to provide EAN broad legal protection in order to receive the back wages to which they were entitled. Not surprisingly, most of the putative class (or about 358 of 385) have signed the releases and have been paid back wages without interest or double damages.

Thus, for the vast majority of the class (*i.e.,* the releasors), this case has devolved into a narrow dispute over whether EAN should pay interest and exemplary damages due to the lengthy delay in making its retroactive wage payments.[2] Of course, the non-releasors are also owed back wages. However, Defendant EAN's defenses to liability of any kind are unquestionably common to both groups; specifically, its NLRA and ADA preemption defenses, its defense based on the alleged exclusive jurisdiction of the Port of Seattle, and its contention that the Ordinance is not retroactive, apply to all putative class members and require no individual determinations. *See* Defendant's Answer (Dkt. #10).

Defendant's opposition against certification rests entirely, in one way or other, on the aforementioned releases. It cites to a number of cases that reach the unremarkable conclusion that individuals who sign releases are neither part of the putative class nor adequately represented by the non-releasing plaintiff. However, this case is distinguishable from this caselaw for two glaring reasons: (1) Defendant seeks to relitigate legal challenges to the SeaTac Ordinance that were previously and correctly resolved by the Washington Supreme Court; in other words, Defendant had no reasonable basis to require putative class members to sign

---

[1] Contrary to Defendant's claim that the agreement sent to current employees seeks a release of a "narrow set of claims," (Opp., at 4:24), the waiver language is not limited to wages claims in this case, but rather protects Defendant against all past claims for "wages" and "other compensation." Lane Dec., Ex. 9 (Dkt. #48). The release signed by former workers is a very broad, general release of all conceivable claims. *Id.* at Ex. 3.

[2] On April 10, 2016, this Court denied without prejudice defendant's motion for partial judgment on the pleadings seeking to dismiss Plaintiff's claim for exemplary damages under the Washington Wage Rebate Act, RCW 49.52. *See* Dkt. #50.

---

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 2
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Telephone: (206) 622-8000 ● Fax: (206) 682-2305

releases as a prerequisite to receiving compensation mandated by that Ordinance; and (2) the Ordinance itself and Washington caselaw prohibit release agreements that deprive employees of required wage-related compensation.

## II.      REPLY ARGUMENT

### A. This Case Is Well Suited To Class Treatment.

As explained above, Plaintiff's legal claims are focused on events and law that are common to all class members. Every argument made by Defendant EAN opposing class certification presupposes the validity of the releases. It appears to concede that but for the releases, this case can and should be certified. Thus, the critical question here is whether the releases are bona fide and give rise to legitimate reasons not to certify the class. Stated otherwise, if there was no permissible basis for Defendant to demand signed releases in exchange for retroactive back pay payments, the existence of the releases should not bar class certification. The answer to this question will turn on whether the Washington Supreme Court's decision in *Filo Foods* was plainly correct and whether Defendant's tactic here is merely a doomed effort to obtain a different answer to the same arguments made to the Washington Supreme Court.

This Court's recent Order Denying Without Prejudice Defendant's Motion for Partial Judgment on the Pleadings sheds light on this issue. *See* Dkt. #50. The Order denied EAN's request to dismiss Plaintiff's demand for exemplary damages based on Defendant's delay in complying with the Ordinance. The Court held that it was premature for it to determine whether Defendant's defenses, previously rejected by the Washington Supreme Court in *Filo Foods*, are or are not "fairly debatable" at this time. *Id.* at 5. Specifically, this Court explained that "If Defendant is simply repeating the same challenges as the *Filo* plaintiffs, and if the Court later determines that the supreme court's conclusion in that case was patently correct, then Defendant

1   will be hard-pressed to argue that the current dispute is truly meritorious and thus bona fide." *Id.,*

2   at 6-7. (Emphasis added).

3      Likewise, if the Washington Supreme Court's rejection of identical legal challenges to

4   the Ordinance was "patently correct," then Defendant had no bona fide basis for demanding

5   releases in exchange for payment of wages owed. This would be akin to an employer paying its

6   workers $2.50 per hour (*i.e.,* far below the statewide minimum wage), and then demanding that

7   the employees waive all claims in exchange for the back pay due. No court would bar class

8   certification on the basis of such inappropriate releases.

9      In addition, as explained in the motion, releases in these circumstances are invalid under

10  the Ordinance and Washington law because they were obtained in exchange for less than full

11  payment of all compensation owed. First, with respect to the Ordinance, Defendant misses the

12  point by arguing that the law does not address "a settlement agreement to resolve a dispute

13  regarding whether the ordinance is valid." Deft. Opp. at 14:15. In fact, there is a broad remedy

14  section in the Ordinance requiring payment "of all remedies available at law not limited to <u>lost</u>

15  <u>compensation for all Covered Workers impacted by the violation(s).</u>" Code § 7.45.100

16  (Emphasis added). And, Section 7.45.080 flatly prohibits any waiver of "any provision of this

17  Chapter...<u>by agreement between an individual Covered Worker and a ... Transportation</u>

18  <u>Employer.</u>" (Emphasis added). Accordingly, no covered SeaTac worker can be compelled to

19  give up any required compensation or remedy available at law in exchange for payment of wages

20  owed. Here, the remedy at issue is the mandatory prejudgment interest (and potential exemplary

21

22

23

24

25

26

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Telephone: (206) 622-8000 ● Fax: (206) 682-2305

damages) owed on delayed payment of wages.[3] Defendant EAN required current and former employees to waive their right to such prejudgment interest in exchange for payment of wages only. *See* Lane Dec., Ex. 1 (Dkt. #48) ("the document prevents you from pursuing legal action against the company on this retro pay and other wage-and-hour claims…"); *Id.,* Ex. 8 ("because of a pending lawsuit…we are requiring a settlement agreement and release of claims in exchange for the retro payment.").

More broadly, as explained in Plaintiff's motion, the Ordinance's prohibition of individual employee waivers is in accord with longstanding Washington and federal law. Like the MWA, the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"), 29. U.S.C. §201 *et seq.* (on which Washington's Minimum Wage Act is based), are mandatory and "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, Inc.* 450 U.S. 728, 740, 101 S. Ct. 1437; 67 L. Ed. 2d 641, 653 (1981). There is a narrowly proscribed process under the FLSA by which employees can agree to a private waiver of their rights under the Act. *See* 29 U.S.C. § 216(c). Such a waiver of rights is only effective, however, if the employer pays the employee *in full* for the unpaid wages due *and* the waiver is overseen by the Department of Labor or approved by a district court. *Id.*; *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982).

However, even before the 1949 adoption of 29 U.S.C. 216(c), the U.S. Supreme Court held invalid an employee's release of rights under the FLSA. *Brooklyn Savings Bank v. O'Neil,*

---

[3] Where an employer fails to pay wages, the amount owed is liquidated and the payment of interest on that sum (at 12% per annum) is mandatory. *See Stevens v. Brink's Home Security, Inc.,* 162 Wn.2d 42, 52 (2007). This is true regardless of whether the Court ultimately finds that there was no "bona fide" dispute and that therefore Defendant must also pay double damages pursuant to RCW 49.52.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 5
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Telephone: (206) 622-8000 • Fax: (206) 682-2305

324 U.S. 697, 709-10, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). The Court explained that employees

may not waive their rights to wages:

> The statute [FLSA] was a recognition of the fact that due to the unequal
> bargaining power as between employer and employee certain segments of the
> population required compulsory legislation to prevent private contracts on their
> part which endangered national health and efficiency and as a result the free
> movement of goods in interstate commerce. To accomplish this purpose standards
> of minimum wages and maximum hours were provided. Neither petitioner nor
> respondent suggests that the right to the basic statutory minimum wage could be
> waived by any employer subject to the Act.  No one can doubt but that to allow
> waiver of statutory wages by agreement would nullify the purposes of the Act.

*Id.* at 706-07. *Accord D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 66 S. Ct. 925, 90 L. Ed. 1114

(1946)(invalidating releases); *see also Slavkov v. Fast Water Partners I, LP,* 2015 WL 6674575

(N.D. Cal. Nov. 12, 2015)(same); *Ladegaard v. Hard Rock Concrete Cutters,* 2001 WL 1403007

(N.D. Ill. Nov. 9, 2001)(same).

Defendant mistakenly relies on *Pugh v. Evergreen Hospital Medical Center,* 177 Wn.

App. 348 (2013). In that case, a union sued (and later settled) a case brought in its associational

capacity. The lawsuit sought back wages due to union members because of an indeterminate

number of missed rest breaks. The court found that it was not a class action and therefore no

approval of the settlement was required. It also recognized that the workers were, unlike the

present case, represented by their union which negotiated a reasonable settlement that its

members were not required to accept. The Court held that the "RNs were best situated to

determine whether the settlement was a fair compromise of a bona fide dispute over the hours

worked during the missed rest breaks." 177 Wn. App. at 361.

In contrast, here Defendant directly contacted putative class members and made a take it-

or-leave it offer: full back pay without interest in exchange for a release. These agreements were

not compromises of a bona fide dispute, but rather a disingenuous attempt to reduce its

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Telephone:  (206) 622-8000 • Fax:  (206) 682-2305

mandatory liability to workers.

**B. Defendant's Release-related Arguments Fail.**

Defendant opposes class certification because (a) Plaintiff lacks standing; (b) the element of typicality cannot be satisfied; (c) Plaintiff is not an adequate representative; (d) individual lawsuits are superior to class treatment; and (e) a class of non-releasors is not sufficiently numerous. All of these arguments fail.

     **1.  Plaintiff Toering Has Standing:** Defendant's argument that Plaintiff lacks standing misstates the nature of the claims here. Plaintiff was harmed in the identical fashion as all putative class members, namely, EAN's failure to pay the higher minimum wage rate required under the Ordinance. The fact that EAN has manufactured an affirmative defense by virtue of the releases has no bearing on whether Mr. Toering has standing to bring the underlying legal claims.

This case stands in stark contrast to the cases cited. For example, in *Clemens v. Bank of N.Y. Mellon,* 2015 WL 221080 at *1 (W.D. Wash. Jan. 15, 2015), a *pro se* plaintiff brought a lawsuit charging breach of contract against defendants with whom he had no contractual relationship. For obvious reasons, this Court granted the defendant's motion to dismiss. Similarly, in *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539 n. 2 (9th Cir. 1987), the EEOC was barred from challenging enforcement of a settlement agreement between the former employee and his former employer. In contrast, Plaintiff Toering plainly has standing to challenge Defendant's failure to pay him and other EAN workers in accordance with the Ordinance.

     **2.  Plaintiff's Claims Are Typical:** Defendant also contends that due to the large number of signed releases, Plaintiff's claims are not typical. Defendant is wrong for several

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 7
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Telephone: (206) 622-8000 • Fax: (206) 682-2305

reasons. First, the primary difference caused by the releases is that the damages owed by EAN are not the same for all class members; specifically, the non-releasors are owed back pay while the releasers are not. However, the Ninth Circuit has held that differences in damages owed to class members in wage and hour cases is not a basis for denying class certification. *See Vaquero v. Ashley Furniture,* __ F.3d __, 2016 WL 3190862 at *3-4 (June 8, 2016); *Levya v. Medline Industries,* 716 F.3d 510, 513 (9th Cir. 2013).

Further, Defendant incorrectly claims that Plaintiff challenges the validity of the releases based on individual instances of coercion. Plaintiff makes no such claim here. Plaintiff argues only that, due to common legal reasons, the releases do not provide a valid defense to class member wage claims. The Court will not be asked to examine individual circumstances related to the execution of the releases. At the same time, courts recognize that even without examples of direct coercion, there are legitimate concerns of implicit coercion where, as here, a company asks its current employees to waive their legal rights in exchange for less than full wage-related compensation: "Courts recognize that "in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when an employer solicits opt-outs from its workers." *Guifu Li v. A Perfect Day Franchise, Inc.,* 270 F.R.D. 509, 517 (N.D. Cal. Sept. 29, 2010)(employer may not, *ex parte,* ask its current employees to opt out of a certified class).

Finally, the circumstances leading to the execution of releases here are far different than in the cases cited by Defendant. *See* Deft. Opp. at 9. As explained above, Defendant had no legitimate right to obtain the releases in support of legal defenses that have been previously litigated and resolved. And, there is also uncontradicted evidence that the named Plaintiff is interested, willing, and able to litigate that issue, notwithstanding the fact that he did not sign a release. He has attested, without contradiction, as follows:

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 8
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Telephone: (206) 622-8000 ● Fax: (206) 682-2305

I am motivated and determined to obtain the maximum possible recovery for all of my fellow workers regardless of whether some decided to sign the release in order receive the partial payments offered by EAN. I understand why many of these co-workers would have signed the releases; as low paid hourly employees, we often live paycheck to paycheck and therefore it is not easy to refuse money offered no matter what the terms imposed.

Toering Dec., ¶7 (Dkt. # 43). Accordingly, the Plaintiff satisfies Fed. R. Civ. P. 23(a)(3).

       **3.**    **Plaintiff Is An Adequate Class Representative:** Defendant argues that Plaintiff is not adequate because there is a potential for conflict with putative class members who signed the releases, primarily because there is "substantial risk" that the releasors allegedly would have to return the retro payments if the releases are held to be invalid. Deft. Opp. at 10.

       Defendant greatly overstates the risk to the releasors in the likely event the releases are held to be invalid. The releases inform workers that they "will not be able to pursue" claims against EAN or "accept any money in relation to … the *Toering* case…." *E.g.* Lane Dec., Exs. 3 (para. 2) and 9 (para. 2). Thus, workers who signed the release did not promise not to participate as absent class members in an action against EAN; nor did they promise to return the money if the release agreement is held to violate public policy.

       Indeed, if the release is held to be invalid, it will be due to a finding that employees had the right to receive all wage-related compensation in the first place, and such right cannot be conditioned on the execution of a release. In that circumstance, there would no conceivable basis for EAN to sue the workers for the return of those funds.

       **4.**    **A Class Action Is Plainly Superior To Individual Actions:** Defendant argues that superiority under Fed. R. Civ. P. 23(b)(3)(A) is lacking because (a) the releasors have an interest in controlling the litigation; and (b) a non-releasor class lacks superiority due to the alleged widespread "hostility" to a class action. Neither argument is persuasive. First, Rule 23(b)(3) requires consideration of four considerations, most of which strongly favor certification

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 9
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Telephone:  (206) 622-8000 ● Fax:  (206) 682-2305

here. *See* Fed. R. Civ. P. 23(b)(3)(B) (no pending litigation), (C) (judicial economy), and (D) (manageability). Second, Defendant's claim that releasors want to control the litigation is based on an overly broad interpretation of the releases described above as well as the highly unlikely scenario that releasors will ever be required to return wages paid. Moreover, to the extent that an individual releasor may in fact disagree with the claims in this case or otherwise not wish to participate, he or she will have the opportunity to opt out following certification and class notice.

Finally, with respect to a potential non-releasor class, there is no basis for the claim that the existence of the signed releases shows "hostility" by non-releasors to the class action approach. Deft. Opp. at 18. As Plaintiff Toering attests, low wage workers who live paycheck to paycheck most likely chose to accept an unexpected financial offer because they have basic living expenses to cover, and not because they oppose full payment of wages. Toering Dec., ¶ 7 (Dkt. # 43). In any event, the alleged "hostility" of those who signed releases has no bearing at all on the attitude of those individuals who chose not to sign. If anything, the non-releasors' refusal to sign shows the opposite: they do not want to waive legal rights in exchange for partial payment of what is due.

5.    **A Non-releasor Class Satisfies Fed. R. Civ. P. 23(a)(1):** Contrary to Defendant's contention, Plaintiff seeks a single class comprised of both releasor and non-releasor workers. However, in the event the Court declines to include releasors in the certified class, there are substantial reasons for certifying the remaining group of 27 current and former EAN employees. According to a leading treatise, there is a "gray area between [a proposed class of] 20 and 40" persons with respect to impracticability of joinder. *Newberg on Class Actions*, § 3:12 W. B. Rubenstein (June 2016 update, 5th ed.; online). "[T]he numerosity requirement [of Rule 23(a)(1)] requires examination of the specific facts of each case and imposes no absolute

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Telephone: (206) 622-8000 • Fax: (206) 682-2305

limitations." *General Tel. Co. of Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559–60 (8th Cir.1982). Moveover, certification of a small class is appropriate where the size of the original class is reduced by a defendant's tactical decision to settle with class members, particularly where those who signed settlements may have had a "natural fear of suing one's employer." *Bublitz v. E.I. du Pont de Nemours & Co.,* 202 F.R.D. 251, 256 (S.D. Iowa 2001). In this case, the legal and factual issues for all 27 workers are identical; there is no reason to have the issues resolved in separate actions or to require affected low wage workers to make motions to join an individual action.

Defendant argues that there is a lack of geographic dispersion, judicial economy would not be impaired, and employees can bring their own cases. First, with respect to dispersion, courts recognize that "the fact that plaintiffs are all located within the same state does not defeat certification. Having all the plaintiffs in close proximity makes the possibility of separate trials even more distasteful." *Bradford v. AGCO Corp.,* 187 F.R.D. 600, 604 (W.D.Mo.1999).

Further, judicial economy is well served by certification in this case. Liability will be resolved equally for all class members when this Court rules on Defendant's common legal defenses. *See e.g., Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56–57 (N.D. Ill. 1996) ("Where a putative class (of 18 individuals) seeks damages that "flow from the resolution of a single question," certification advances judicial economy); *accord Coleman through Bunn v. D.C.,* 306 F.R.D. 68, 82 (D.D.C. 2015) (same; certifying class of 34 potential members).

Finally, it is ludicrous and self-serving for Defendant to argue that non-releasor workers

are "well-positioned" to bring individual lawsuits. Deft. Opp. at 16-17. As Defendant knows, this class is comprised of its lowest paid workers who are less likely to effectively navigate the legal system, regardless of the availability of statutory fee-shifting provisions. The courts recognize that "one of the basic reasons for promulgating rule 23 was to provide small claimants with a method of obtained redress for claims which would otherwise be too small to warrant individual litigation." *Koss v. Wackenhut Corp.*, 2009 WL 928087 *4 (S.D.N.Y. March 30, 2009) (certifying class of 32), quoting *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 411 (S.D.N.Y.1998). Here, the putative class members have relatively small minimum wage claims. Indeed, by its own admission, the *average* claim amount is $1,630. Lane Dec. ¶ 20 (Dkt. #48). In these circumstances, joinder is impracticable, and the class action approach is a clearly superior method for resolving this dispute. *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying overtime class of 16 truck drivers).[4]

### III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in his motion, Plaintiff respectfully requests that the Court grant the motion for class certification.

DATED this 12th day of August, 2016.

SCHROETER GOLDMARK & BENDER

Adam J. Berger, WSBA #20714
Martin S. Garfinkel, WSBA# 20787

---

[4] Pending verification that Defendant has in fact brought its pay practices into compliance with the Ordinance effective October 4, 2015, Plaintiff does not oppose its request that the class period should end effective October 3, 2015, to the extent only that this end date is for the purpose of excluding persons hired and workweeks occurring after that date. However, this end date must not affect ongoing remedies (*e.g.* interest) for violations that occurred prior to that date.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 12
(2:15-cv-2016-JCC)

1

SCHWERIN CAMPBELL BARNARD
IGLITZIN & LAVITT

2

3

*s/Carson Flora*
*s/Dmitri Iglitzin*
Carson Flora, WSBA #37608
Dmitri Iglitzin, WSBA #17673
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6006
(206) 257-6040

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION - 13
(2:15-cv-2016-JCC)

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Telephone:  (206) 622-8000 ● Fax:  (206) 682-2305

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Harry Korrell                              Counsel for Defendant
Davis Wright Tremaine
1201 Third Avenue, Suite 2200
Seattle, WA 98101


Carson Flora                              Co-Counsel for Plaintiffs
Dmitri Iglitzin
Schwerin Campbell Barnard
Iglitzin & Lavitt
18 West Mercer Street, Suite 400
Seattle, WA 98119


DATED at Seattle, Washington this 12th day of August, 2016.


_s/ Martin S. Garfinkel_
Martin S. Garfinkel, WSBA #20787

DECLARATION OF SERVICE
Case No. 2:15-cv-02016-JCC

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Telephone: (206) 622-8000 • Fax: (206) 682-2305