THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE TOERING, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAN HOLDINGS LLC,<br><br>Defendant. | CASE NO. C15-2016 JCC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

This matter comes before the Court on Plaintiff's Motion to Certify Class (Dkt. No. 41). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.     BACKGROUND

This lawsuit is a putative class action in which Plaintiff Bruce Toering alleges that Defendant EAN Holdings LLC, doing business as Enterprise, Alamo, and National car rental companies, violated SeaTac Municipal Code § 7.45, the Washington Minimum Wage Act ("MWA"), Wash. Rev. Code § 49.46, and the Wage Rebate Act ("WRA"), Wash. Rev. Code § 49.52.

On January 1, 2014, the "Ordinance Setting Minimum Employment Standards for

Hospitality and Transportation Industry Employers" ("Ordinance") went into effect and was codified as SeaTac Code § 7.45. Relevant to this case, the Ordinance required that all covered workers[1] be paid a "living wage" of $15 per hour, adjusted annually. SeaTac Code § 7.45.050. The living wage increased to $15.24 per hour on January 1, 2015. Toering worked for EAN, a transportation employer,[2] as a driver from September 12, 2012 to August 18, 2015. (Dkt. No. 41 at 3.) In 2014, Toering earned $9.32 per hour. (*Id.*) Beginning January 1, 2015, he earned $9.47 per hour. (*Id.*) It is undisputed that EAN did not pay its covered employees the living wage required by SeaTac Code § 7.45 from January 1, 2014 to August 23, 2015.

In August 2015, the Washington State Supreme Court upheld the validity of the Ordinance "in its entirety." *Filo Foods, LLC v. City of SeaTac*, 357 P.3d 1040, 1045 (Wash. 2015). EAN began paying its employees the living wage on October 23, 2015, retroactive to August 23, 2015. (Dkt. No. 47 at 3.) In November 2015, Toering filed this putative class action on behalf of current and former employees of EAN. (Dkt. No. 2-1 at 4–5.) Toering seeks lost wages, prejudgment interest, double damages on willfully withheld wages, and attorney fees and costs. (*Id.* at 8.)

In June 2016, EAN mailed a settlement agreement to nearly 400 current and former employees, offering back wage payments—but no interest or double damages—in exchange for the employee's release of any claims against EAN, including those asserted by Toering in the present action. (Dkt. No. 41 at 4–6.) To date, about 358 of 385 putative class members have

---

[1] A "covered worker" is "any individual who is either a hospitality worker or a transportation worker." SeaTac Code § 7.45.010(C). A "transportation worker" is defined as "any nonmanagerial, nonsupervisory individual employed by a transportation employer." SeaTac Code § 7.45.010(N).

[2] A "transportation employer" is defined as an entity that "operates or provides rental car services utilizing or operating a fleet of more than one hundred (100) cars" and "employs twenty-five (25) or more nonmanagerial, nonsupervisory employees in the performance of that operation." SeaTac Code §§ 7.45.010(M)(2)(a) & (b). EAN does not dispute that it is a transportation employer under the code. (Dkt. No. 10 at ¶ 5.)

signed the release ("releasors").[3] (Dkt. No. 51 at 2.) Toering is among the twenty-seven class members who have not. (Dkt. No. 41 at 6.) Toering now seeks class certification under Fed. R. Civ. P. 23(b)(3) and moves for an order certifying the following class:

> All past and present employees employed by Defendant at any time since January 1, 2014 at its SeaTac locations in hourly paid, nonmanagerial and nonsupervisory job positions, including, but not limited to "lot drivers," "oil changers," "mechanics," "customer service agent," "return agent," "exit booth agent," "shuttle driver," "service agent," and other positions.

(Dkt. No. 2-1 at ¶ 8.)

## II.     DISCUSSION

### A.     Legal Standard for Class Certification

A party seeking to litigate a claim as a class representative must affirmatively satisfy the requirements of Fed. R. Civ. P. 23(a) and the requirements of at least one of the categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). In determining whether the plaintiffs have carried this burden, the Court must conduct a "rigorous analysis." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). This inquiry may "entail some overlap with the merits of the plaintiff's underlying claim[,]" though the Court considers the merits only to the extent that they overlap with the requirements of Rule 23 and allow the Court to determine the certification issue on an informed basis. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The ultimate decision to certify a class is within the Court's discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

---

[3] The Complaint does not allege that the releases are invalid. *See generally* Dkt. No. 2-1. EAN's contention that 358 members of the putative class are barred from bringing suit due to the releases is an affirmative defense, and also relevant to a damages calculation. Furthermore, although the Court makes no ruling on the releases now, it is possible they are void or voidable under *Larsen v. Rice*, 171 P. 1037, 1039–40 (Wash. 1918) and SeaTac Code §§ 7.45.080 & 090(A).

## B. Rule 23(a) Requirements

Rule 23(a) requires that one or more members of a class may sue as a representative plaintiff only if (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a); *Mazza*, 666 F.3d at 588 (Rule 23(a) requires "numerosity, commonality, typicality and adequacy of representation"). EAN contests certification on typicality and adequacy grounds.[4] (Dkt. No. 47 at 7.) Because a rigorous analysis is required regardless of a defendant's opposition, the Court addresses each requirement independently.

### 1. Numerosity

Rule 23(a)'s first requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement requires the examination of the specific facts of each case, though "in general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (unpublished); *see also Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 652 (W.D. Wash. 2011) (certifying a class of forty-three to fifty-four workers). Here, Toering represents approximately 385 employees who worked at least one pay period during 2014 in which they earned less than $15.00 an hour or one pay period between January and August 2015, in which they earned less than $15.24 an hour. A

---

[4] EAN also argues that Toering does not have standing to challenge the releases. As previously stated, Toering, in his complaint, does not challenge the releases. In fact, seeing as how the settlement letters were not sent to putative class members until approximately seven months after the Toering instituted this action, it would have been difficult for him to speculatively challenge future releases. Defendant's standing argument accordingly fails.

putative class of 385 members is more than sufficient to make joinder of all members impracticable. The numerosity requirement is met.

### 2. Commonality

Under Rule 23(a)(2)'s commonality requirement, a plaintiff must demonstrate that the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 131 S. Ct. at 2551). The key inquiry is not whether the plaintiffs have raised common questions, but whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551) (emphasis in original). Every question of law or fact need not be common to the class. Rather, all Rule 23(a)(2) requires is "a single significant question of law or fact." *Id.* (quotation omitted); *see Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012). The existence of "shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (amended).

Minimum wage violations are well suited for class-wide disposition. *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359–60 (E.D.N.Y. 2011) (gathering cases and noting that numerous courts have found wage claims are perhaps "the most perfect questions for class treatment"). Here, Toering claims, and EAN does not dispute, that EAN failed to pay its hourly employees the living wage of $15.00 per hour during 2014 or $15.24 per hour during 2015. The putative class members complain of the same injury of being underpaid. Whether EAN was obligated under SeaTac Code § 7.45 to pay its hourly employees in accordance with the living

wage minimums set by the ordinance is a single, common question capable of being answered on a class-wide basis. Because the commonality linking the class members in this case is the dispositive question in the lawsuit, this matter is a "classic case for treatment as a class action." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (district court abused discretion in finding that commonality was absent in FDCPA class action where dispositive legal question was common to all claims). The commonality requirement is satisfied.

### 3. Typicality

Toering must next show that his claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (internal quotation marks omitted). The commonality and typicality inquiries, which "tend to merge," both serve as "guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5 (quotations and citation omitted). Ultimately, representative class claims are 'typical' if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (noting the "permissive" nature of the typicality inquiry).

The Court agrees with Toering that his claims are "reasonably co-extensive" with those of the absent class members. *Id.* Toering was employed by EAN in a nonsupervisory, hourly job during the class period and was not paid the living wage under SeaTac Code § 7.45. EAN argues

that because Toering did not sign the release, his claim is not typical of the putative class members who signed the release. This argument misses the mark. Both Toering and the putative class members, whether they signed the release or not, suffered the same alleged injury: the failure of EAN to pay its covered employees the living wage mandated by SeaTac Code § 7.45. To the extent EAN paid putative class members who signed the release, that would impact the damages calculation. However, the difference in damages owed to class members in wage and hour cases is not a basis for denying class certification. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).[5] Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the named plaintiff "fairly and adequately" protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To determine whether the representative parties will adequately represent a class, the Court must examine (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020). As the Ninth Circuit has noted, adequate representation depends upon "an absence of antagonism between representatives and absentees[] and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (quotations and citation omitted). Here, the Court finds that Toering and his counsel will

---

[5] In *Vaquero*, the court held:
> In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions *necessarily* caused the class members' injury. Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury. Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed from *Defendants'* actions. The district court did not abuse its discretion in holding that different damages calculations do not defeat predominance in this circumstance.

824 F.3d at 1155 (emphasis in original).

adequately represent the proposed class.

For the reasons discussed throughout this order, Toering's claims are largely identical to those of the proposed class members. Toering seeks the same types of remedies and determination of liability for EAN's conduct and is not subject to unique defenses that would place them him odds with absent class members. EAN has asserted a variety of federal preemption as well as state law defenses. These defenses are applicable to both the putative class members who signed the release and those who did not; they are capable of being dealt with on a class-wide basis.

EAN has an additional defense which applies to the releasors, and argues that there is a conflict between the class representative and the releasors because "[i]f the Court voids the settlement, the Releasor could be 'forced to return the [settlement] payment,' and if EAN prevails on its Proposition 1 defenses, the Releasor would end up with nothing." (Dkt. No. 47 at 10, quoting *Stewart v. Avon Prods., Inc.*, 1999 WL 1038338, at *5 (E.D. Pa. Nov. 15, 1999).) This concern is unfounded, as this is a Rule 23(b)(3) class, and if the releasors wish to keep their settlement payment, they will have the opportunity to opt out of the class.

Toering accordingly shares the same interest in this lawsuit as the unnamed class members. He has further declared that he is "motivated and determined to obtain the maximum possible recovery for all of my fellow workers regardless of whether some decided to sign the release in order to receive the partial payments offered by EAN." (Dkt. No. 43 at ¶ 7.) EAN has offered no evidence to the contrary. The Court is satisfied that there are no conflicts of interests that will preclude the named plaintiffs or their counsel from adequately and fairly representing the class. Toering has satisfied Rule 23(a)(4)'s requirements.

### C.     Rule 23(b) Requirements

After satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate that the case is maintainable as a class action under one of the three Rule 23(b) prongs. Here, Toering argues that the class is certifiable under the third prong of Rule 23(b). This prong—Rule 23(b)(3)—requires two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Ultimately, certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1023 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

### 1. Predominance

The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997); *Abdullah*, 731 F.3d at 964. This inquiry presumes the existence of common factual or legal issues required under Rule 23(a)'s "commonality" element, focusing instead "on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1023. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* The primary issue for resolution here is whether SeaTac Code § 7.45 obligated EAN to pay its covered employees the living wage. This claim predominates over all others and is well suited to class-wide resolution.

### 2. Superiority

ORDER GRANTING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION
PAGE - 9

Rule 23(b)(3) also requires the Court to find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When undertaking this inquiry, the Court considers (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Zinzer v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Consideration of these factors must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinzer*, 253 F.3d at 1190.

Here, a class action is superior to other available methods of adjudicating the class members' claims. EAN maintains that individual lawsuits to resolve these claims are preferable. However, "[w]here damages suffered by each putative class member are not large," the first factor "weighs heavily in favor of certifying a class action." *Id.*; *see Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The average amount of withheld wages is $6,771 (Dkt. No. 41 at 11), making it unlikely that individual plaintiffs will challenge a large corporate defendant with vast litigation resources. *See Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 657 (W.D. Wash. 2011). Additionally, there is no pending litigation, this class action is manageable, and it promotes judicial economy.

EAN also claims that the releasors, by signing the settlement and relase, are hostile to the class action. However, as Washington is "a pioneer in the protection of employee rights," *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.3d 582, 586 (Wash. 2000), this Court is "mindful of the fact that the protections conferred by these laws have a public purpose beyond the private

interests of the workers themselves." *O'Connor v. Uber Technologies, Inc.*, 2015 WL 5138097, at *13 (N.D. Cal. 2015) (internal citations and quotation omitted). And, as previously addressed, all putative members are free to opt out of the class. Toering satisfies the requirements of Rule 23(b)(3).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification (Dkt. No. 41) is GRANTED. The Court ORDERS the class be certified as:

> All past and present employees employed by Defendant at any time since January 1, 2014 through October 3, 2015 at its SeaTac locations in hourly paid, nonmanagerial and nonsupervisory job positions, including, but not limited to "lot drivers," "oil changers," "mechanics," "customer service agent," "return agent," "exit booth agent," "shuttle driver," "service agent," and other positions.

DATED this 13th day of September 2016.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE